UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
YVES SANON,

                           Plaintiffs,

           – against –                            **MEMORANDUM AND ORDER**
                                                                           06-CV-4928 (SLT)(LB)

DEPARTMENT OF HIGHER EDUCATION and NCO
FINANCIAL SYSTEMS,

                           Defendants.
------------------------------------------------------------x
**TOWNES, United States District Judge:**

On September 12, 2006, *pro se* plaintiff Yves Sanon ("Plaintiff") commenced this action against the U.S. Department of Education ("Education"), incorrectly s/h/a "Department of Higher Education," and collection agency NCO Financial Systems ("NCO") (collectively, "Defendants"), seeking the return of more than $14,000 allegedly garnished from his wages to recoup a defaulted student loan obligation. Plaintiff contends that the defaulted student loans were never received by him or were the result of fraudulent applications. On August 1, 2008, Defendants separately moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This Court has federal question jurisdiction to review Education's administrative wage garnishment decision, pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1331. Upon consideration of the written submissions of each party, and for the reasons set forth below, Defendants' motions are granted.

## BACKGROUND

On July 26, 2002, defendant Education notified Plaintiff of its intent to collect the unpaid balance on two outstanding student loans through administrative wage garnishment ("AWG"). Defs. Joint Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Rule 56.1 Stmt")

1

¶ 56.[1] The loans at issue were a 1986 loan for $2,000 and 1987 loan for $2,000 that Plaintiff had applied for while attending Queensboro Community College ("QCC"). *Id.* ¶¶ 16, 20, 35. Education issued a wage withholding order to Plaintiff's employer on September 3, 2002. *Id.* ¶ 58. NCO, a debt collection company assigned by Education, received the wage garnishment payments tendered from Plaintiff's employer. *Id.* ¶ 59.

On October 25, 2002, Plaintiff requested an oral hearing with Education to contest the AWG decision claiming the loans were based on a forgery or unauthorized signature. Admin. R. for March 10, 2003 AGW Decision ("A.R. 2003") 5. In a letter dated October 23, 2002 from Plaintiff's attorney at the time to NCO, Plaintiff contended that he was never granted, nor did he receive, the 1986 or 1987 loans and requested a copy of the promissory note that he allegedly signed on the two loans. A.R. 2003 6, Letter from Musa-Obregon to Worthington (Oct. 23, 2002). In a letter dated December 27, 2002, again through his counsel, Plaintiff acknowledged that he applied for these loans but claimed that they were denied. A.R. 2003 8, Letter from

---

[1] Plaintiff in this case failed to submit a Local Rule 56.1 Statement of Undisputed Facts. Local Rule 56.1 requires a party opposing summary judgment to file a separate statement of material facts "as to which it is contended that there exists a genuine issue of material fact," and that controverts all material facts set forth in the moving party's Rule 56.1 Statement. Local Civil Rule 56.1(b)-(c). Parties are not permitted to controvert a moving party's material facts with conclusory or unsupported statements, as "each statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible . . . ." *Id.* at 56.1(e). Any material fact in a movant's Rule 56.1 Statement not controverted by the opposing party is deemed admitted. *Id.* at 56.1(c).

Here, Plaintiff failed to specifically contest Defendants' Rule 56.1 Statement and only provided factual allegations unsupported by citation to admissible evidence. A *pro se* litigant should be given special latitude in responding to a summary judgment motion. *See McPherson v. Coombe,* 174 F.3d 276, 280-81 (2d Cir. 1999). Nevertheless, "[e]ven a *pro se* party is not exempt from the requirements of summary judgment motions." *Johnson v. Queens Admin. for Children's Servs.,* No. 02-CV-4497, 2006 WL 229905, at *4 (E.D.N.Y. Jan. 31, 2006) (citation omitted). Courts have "broad discretion" in dealing with a party's failure to comply with local court rules. *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 72 (2d Cir. 2001). In this case, the Court accepts uncontroverted statements in Defendants' Rule 56.1 Statement where it is supported by the record.

Musa-Obregon to Carvajal (Dec. 27, 2002). Plaintiff conceded that he previously received a loan for $2,500 in 1983 to attend Technical Career Institute, which had already been paid. *Id.* He submitted applications for discharge of the loans claiming they were based on an unauthorized signature and requested proof that the checks were issued and cashed and proof that Plaintiff received the loans to attend QCC. *Id.* at 8, 10. On December 14, 2002, Education suspended the AWG to review Plaintiff's claim that he did not receive the 1986 and 1987 loans and scheduled a telephonic hearing for March 5, 2003. 56.1 Stmt. ¶¶ 61, 63. A letter from Education to Plaintiff's attorney dated February 11, 2003 purports to enclose copies of the three promissory notes. A.R. 2003 at 7.

Neither Plaintiff nor his attorney appeared for the telephonic hearing. A.R. 2003 1, AWG Dec. (Mar. 10, 2003). Thereafter, on March 10, 2003, a hearing officer issued a decision (the "March 10 AWG Decision") based on the written records before her. *Id.* The hearing officer found that Education records showed issuance and payment of the two disputed loans, that copies of the disputed promissory notes were sent to Plaintiff's attorney, that Plaintiff had failed to provide copies of signature exemplars to adjudicate his claims of forgery, and that Education only held the promissory notes on Plaintiff's student loans, which are generally paid directly to the school, and thus Education would not be in possession of cancelled checks. *Id.* The March 10 AWG Decision determined that Plaintiff was subject to the garnishment at the rate of 10 percent of his disposable pay. *Id.* The collection of Plaintiff's garnished wages resumed on May 15, 2003. Rule 56.1 Stmt ¶ 66; Francisco Decl. ¶ 25.

Education also issued a second AWG Decision nearly one year later on March 15, 2004, apparently in response to further submissions by Plaintiff. *Id.* ¶ 75; *see also* Admin. R. for March 15, 2004 AWG Decision ("A.R. 2004") 1-4, AWG Dec. (Mar. 15, 2004). This second

3

decision concluded that, by a preponderance of evidence, the signatures on the disputed 1986 and 1987 promissory notes were Plaintiff's and that Plaintiff was subject to garnishment at the rate of 15 percent of his disposable income. *See.* A.R. 2004 2. Plaintiff was represented by an attorney from October 2002 to May 2003— the duration of his administrative challenge to Education's AWG decision. Rule 56.1 Stmt ¶ 71. Plaintiff's debt is paid in full, and no further collection efforts are underway. *Id.* ¶ 78.

On September 12, 2006, Plaintiff commenced the instant action, alleging that Defendants unjustly garnished his wages. Defendants filed separate motions for summary judgment on August 1, 2008. At the initiation of this action, Plaintiff proceeded *pro se*. At some point during the discovery stage, Plaintiff was represented by counsel. Nevertheless, during this motion stage, Plaintiff is again proceeding *pro se*. The Court now turns to these motions.

## DISCUSSION

### I. Summary Judgment Standards

Summary judgment should be granted if there is no genuine material issue of fact in dispute requiring resolution by trial and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 248 (1986). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1535 (2d Cir. 1997) (quoting *Anderson*, 477 U.S. at 248); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Celotex Corp. v. Cadrett*, 477 U.S. 317, 322 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities

and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000). When a party is proceeding *pro se*, the Court is obliged to "read his supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

## II. Claims Against the Department of Education

### A. The Federal Tort Claims Act

Education argues that this Court lacks subject matter jurisdiction over Plaintiff's claim based on sovereign immunity. It is well established that "the United States, as sovereign, is immune from suit save as it consents to be sued." *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981) (internal quotation marks and citations omitted). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit," *FDIC v. Meyer*, 510 U.S. 471, 475 (1994), as such a waiver is a "prerequisite" for subject matter jurisdiction in federal district courts. *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *Presidential Gardens Assocs. v. United States*, 175 F.3d 132, 139 (2d Cir. 1999). A waiver of sovereign immunity cannot be implied; rather, it must be "unequivocally expressed." *See United States v. Testan*, 424 U.S. 392, 399 (1976); *Doe v. Civiletti*, 635 F.2d 88, 93-94 (2d Cir. 1980).

Here, Plaintiff's erstwhile attorney maintained that Plaintiff's "claim . . . sounds in tort for wrongful garnishment. . . ." Cunha Decl., Ex. K, Letter from Rosenthal to Cunha (May 16, 2008). As a tort action against Education, an agency of the Federal Government, in order to pierce the United States' sovereign immunity, the claim must be brought under the Federal Tort Claims Act, 28 U.S.C. § 2679(b)(1) ("FTCA"), which "provides that a suit against the United States is the exclusive remedy for a suit for damages for injury or loss of property resulting from

the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." *Hill v. U.S. Attorney's Office, E.D.N.Y.*, No. 08-CV-1045, 2009 WL 2524914, at *6 (E.D.N.Y.) (quoting *Rivera v. United States*, 928 F.2d 592, 608 (2d Cir. 1991)) (internal quotation marks omitted). Moreover, Plaintiff's tort claim against Education must be properly treated as against the United States, because the United States is the only proper defendant in actions brought under the FTCA. *See* 12 U.S.C. § 2679(b)(1); *see also Shabtai v. U.S. Dept. of Educ.*, No. 02 Civ. 8437, 2003 WL 21983025, at *6 (S.D.N.Y. Aug. 20, 2003).

Although the FTCA provides a limited waiver of the United States' sovereign immunity for certain tortious conduct, it also requires that before a claimant may initiate an action against the United States, "the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied." 28 U.S.C. § 2675(a). This requirement is "jurisdictional and cannot be waived." *Coin Corp. v. United States*, 700 F.2d 836, 841 (2d Cir. 1983). Plaintiff's complaint does not allege that he filed an administrative claim with respect to the alleged torts committed by Education, and this failure alone requires dismissal of these claims. *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987) (plaintiff bears burden "to both plead and prove compliance with the statutory requirements"). Moreover, Education has no record of any administrative claim filed by Plaintiff. *See* Decl. William H. Haubert, III, ¶ 3. Accordingly, Plaintiff's claim under the FTCA is dismissed.

### B.    The Administrative Procedure Act

Liberally reading Plaintiff's *pro se* pleadings, the Court also construes Plaintiff's action as for one reviewing Education's AWG pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701, *et seq.* ("APA"), which governs judicial review of an action taken by an administrative

agency. The APA provides "a limited waiver of sovereign immunity for suits seeking non-monetary relief against agencies and officers of the United States." *Lipkin v. United States S.E.C.*, 468 F. Supp. 2d 614, 621 (S.D.N.Y. 2006). Thus, if applicable to Plaintiff's claim, in conjunction with federal question jurisdiction under 28 U.S.C. § 1331, it constitutes the United States' consent to be sued in this Court.

The APA provides, in pertinent part, that a reviewing court shall set aside agency action, findings, and decisions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . [or] is unsupported by substantial evidence." 5 U.S.C.A. § 706(2). *See Fox Television Stations. Inc. v. Federal Communications Comm'n*, 489 F.3d 444, 454-55 (2d Cir. 2007). Agency action is arbitrary and capricious where the agency has "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Riverkeeper, Inc. v. E.P.A.*, 475 F.3d 83, 95 (2d Cir. 2007) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). In applying this standard, the Court's "scope of review . . . is narrow and . . . [it] is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs.*, 463 U.S. at 43. The heavy burden of proof under this deferential standard falls on Plaintiff. *Catto*, 2009 WL 928094 at *4 (citing *Chitoiu v. UNUM Provident Corp.*, No. 05 Civ. 8119, 2007 WL 1988406, at *5 (S.D.N.Y. July 6, 2007)).

### i. APA's Application to Claims for Money Damages

As a threshold matter, Education raises whether the APA may apply to Plaintiff's claim as he only requests monetary relief. *See* Educ. Br. 13 n.8. In general, the APA is inapplicable to

claims seeking money damages as it is expressly limited to "relief other than money damages." *See McGrath v. Mukasey*, No. 07 Civ. 11058, 2008 WL 1781243, at *4 n.55 (S.D.N.Y. Apr. 18, 2008) (quoting 5 U.S.C. § 702). Nevertheless, this bar against monetary damages does not adhere to claims for specific relief, even those requiring a purely monetary judgment. *See Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988). That is, the APA waives the United States' sovereign immunity where a plaintiff seeks specific relief (*e.g.*, challenging a Secretary's refusal to reimburse a plaintiff) rather than money damages (*e.g.*, requesting compensation as a substitute for that which ought to have been done). *Id.* In this case, Plaintiff's request is one for specific relief as he seeks the return of $14,242.98 of his wages garnished over the years. Compl. 5. Thus, the APA provides the necessary consent to waive the United States' sovereign immunity in this context. *See Catto v. Duncan*, No. 04 Civ. 7364, 2009 WL 928094 (S.D.N.Y. Mar. 31, 2009); *Harrill v. U.S. Dep't of Educ.*, No. 01:07-CV-385, 2009 WL 230126 (S.D. Ohio Jan. 30, 2009); *Kelly v. Aman Collections Servs.*, No. 03-6091, 2007 WL 909547 (D. Minn. Mar. 23, 2007) (reviewing Education's garnishment decision under the APA).

### ii. The March 10, 2003 AWG Decision

On March 10, 2003, an Education hearing officer issued a decision concluding that Plaintiff's efforts to halt the AWG were meritless and stating that Plaintiff was subject to a garnishment at the rate of 10% of his disposable pay. Plaintiff had argued that (1) his applications were denied so he never received loans proceeds in 1986 or 1987; (2) he was entitled to a copy of the promissory notes on which the debt was based; (3) his signature was falsified in connection with the loans; and (4) he was not provided copies of cancelled checks establishing payment of the loans. A.R. 2003 2-3, AWG Dec. (Mar. 10, 2003). The March 10, 2003 Decision recited that the hearing officer reviewed Plaintiff's contentions as well as "all

available records related to [Plaintiff's] account, including those submitted by [Plaintiff] and those held by [Education]." *Id.* The administrative record for the March 10, 2003 decision contains the following: (1) Plaintiff's request for a hearing form, (2) two letters from Plaintiff's then-attorney to NCO dated October 23, 2002 and December 27, 2002, (3) Education's GSL Program Specific Screen (computerized records), (4) Plaintiff's National Student Loan Data System Loan History, (5) a copy of a promissory note with the signature date obscured, and (6) a copy of a promissory note signed and dated August 3, 1987. A.R. 2003 1-20.

Based on this evidence, the Education hearing officer determined that Plaintiff applied for and received the 1986 and 1987 student loans at issue. *Id.* at 2. Education found that Plaintiff received a loan for $2,000.00 at an interest rate of 9.00% on May 14, 1986 to attend QCC. Another loan for $2,000.00 at an interest rate of 9.63% was disbursed on October 1, 1987 for Plaintiff to attend QCC. Education maintained that Plaintiff defaulted on both loans on May 31, 1989.

The administrative record supports these determinations. First, Plaintiff conceded that he applied for both loans. Second, the GSL Program Specific Screen and the National Student Loan Data System Loan History both establish that loans in the amount of $2,000 were disbursed in 1986 and 1987 and that Plaintiff defaulted on the loans on May 31, 1989. *Id.* at 13, 14, 16. Plaintiff has not contested the validity of Education's electronic records. Third, the administrative record also includes a copy of a promissory note for $2,000 with the signature line and date obscured by an apparent crease in the paper. *Id.* at 17. Education reasonably presents this as Plaintiff's 1986 promissory note as the form states it is for the period covering February 1986 to June 1986. *Id.* Another note for $2,000 appears in the record bearing Plaintiff's name on the signature line and dated August 3, 1987. *Id.* at 19. Fifth, Plaintiff failed to present any

9

evidence to Education that the signatures on the promissory notes were fraudulent. The AWG Decision explained that student loan borrowers requesting a loan discharge due to the unauthorized endorsement of a loan check or fund transfer are required to provide five different authentic specimens of their signature, with two made within one year of the contested signature. *Id.* at 3. Plaintiff did not provide any handwriting specimens. Lastly, as the AWG Decision iterated, student loans are typically issued from the lending institution to the school and, thus, neither the student nor Education would have the proof that the checks were cashed. *Id.* at 3.

Plaintiff's sole basis for believing that the 1986 and 1987 loans were denied were oral representations made by an unidentified employee in the financial aid office at QCC. Cunha Decl., Ex. B., Pl. Dep. 63:9-16, 64:9-12, 67:3-9, 78:3-25, 80:2-5 82:17-83:3. Nevertheless, Plaintiff maintained that he did not receive a written notification of the denial and he concedes he took no steps to meaningfully follow up on the applications. *Id.* at 63:24-64:1, 67:22-68:2. Accordingly, based on the promissory notes and the Education records showing disbursed loans for the same time period and for the same amount as Plaintiff's application, Education's determination that Plaintiff received the 1986 and 1987 loans was supported by substantial evidence and was neither arbitrary nor capricious nor contrary to law. *Id.* at 13, 14, 16.

### iii. The March 15, 2004 AWG Decision

In a letter dated October 20, 2003 submitted to Education, Plaintiff reiterated his claim that QCC school officials falsely collected the student loans in 1986 and 1987 under his name using a forged loan application and falsified numbers. A.R. 2004 6. Plaintiff asserted that the top and bottom parts of the promissory notes do not match. *Id.* at 10. He also requested a copy of the loan check or a copy of the electronic fund transfer authorization. *Id.* Plaintiff also

included a number of attachments, including a QCC transcript and an Education letter notifying Plaintiff of its intent to collect on his defaulted loans. *Id.* at 7-12.

In response, on March 15, 2004, Education issued an additional AWG decision, again concluding that Plaintiff was subject to garnishment. The March 15 AWG Decision considered (1) Plaintiff's submissions, (2) printouts from NCO, (3) a Debt Management Collection System ("DMCS") Account Transaction Screen, and (4) the GSL Program Specific Screens. *See id.* at 5-54. Education concluded, "based upon the preponderance of the evidence, that the contested signatures on the loan documents in question are [Plaintiff's]." *Id.* at 2. Indeed, Plaintiff again presented no evidence to substantiate his objections to the validity of Education's electronic records or the signed promissory notes. *Id.* Furthermore, Education explained that the student loan borrower has the burden of showing that a disbursement check was not properly endorsed and that checks were not issued by or payable by it and, therefore, it could not request a copy of the cancelled check. *Id.* Education noted that a copy of Plaintiff's student loan file was sent to his attorney in March 2003. *Id.* Thus, Plaintiff's protestations of fraudulent promissory notes were mere conclusory allegations unsupported by any evidence and Plaintiff's repeated requests for copies of the cancelled check would prove nothing. Accordingly, Education's March 15, 2004 Decision to continue the AWG was neither arbitrary nor capricious nor contrary to law, and that it is supported by substantial evidence.

Education is, thus, entitled to summary judgment on Plaintiff's APA claim.

### C. Higher Education Act

The Court explores a third theoretical basis for waiver of sovereign immunity under the Higher Education Act ("HEA"), 20 U.S.C. § 1070, *et seq.* The HEA waives the United States'

11

immunity from suit in some circumstances. *Shabtai*, 2003 WL 21983025, at *7. The HEA permits the Secretary of Education to

> sue and be sued in any court of record of a State having general jurisdiction or in any district court of the United States, and such district courts shall have jurisdiction of civil actions arising under this part without regard to the amount in controversy, . . .; but no attachment, injunction, garnishment, or other similar process mesne or final, shall be issued against the Secretary or property under the Secretary's control and nothing herein shall be construed to except litigation arising out of activities under this part from the application of sections 509, 517, 547, and 2679 of Title 28[.]

20 U.S.C. § 1082(a)(2).

Nevertheless, two federal courts have held the HEA's waiver of sovereign immunity does not extend to claims for monetary relief payable by the United States Treasury. *See Valentino v. U.S. Dept. of Educ.*, No. 09-cv-0006, 2009 WL 2985686, at *4 (S.D.Cal. Sept. 16, 2009); *De La Mota v. U.S. Dept. of Educ.*, No. 02 Civ. 4276, 2003 WL 21919774, at *4 (S.D.N.Y. Aug. 12, 2003), *rev'd on other grounds*, 412 F.3d 71 (2d Cir. 2005). Both cases cited the Second Circuit's analysis of an analogous statute in *Presidential Gardens Assoc.*, 175 F.3d at 141. The Second Circuit found that any waiver of immunity that was created by a similar "sue and be sued" clause "is limited to funds under the control of the Secretary[.]" *Id.* Education argues, and Plaintiff has not disputed, any judgment awarded in this action would be paid by the Judgment Fund administered by the Department of the Treasury, *see* 31 U.S.C. § 1304, and not out of any Education fund. *See* Educ. Br. 12 n.7.

Even if suits for damages payable by the general treasury were permitted under the HEA, Education would still be immune from Plaintiff's claim for his failure to follow the requirements of the FTCA. The HEA explicitly states that "nothing herein shall be construed to except litigation arising out of activities under this part from the application of . . . 2679 of Title 28 [the FTCA]." 20 U.S.C. § 1082(a)(2). Thus, the "HEA . . . has required that all tort claims follow

12

the dictates of the FTCA." *Burgess v. U.S. Dept. of Educ.*, No. 1:05-CV-98, 2006 WL 1047064, at *8 (D.Vt. Apr. 17, 2006). Since Plaintiff's action can only be construed as a tort claim against Education, Plaintiff was still required to comply with the procedural prerequisites of the FTCA. As noted above, Plaintiff has failed to do so and, thus, § 1082(a)(2) does not waive sovereign immunity under the HEA.

### III. Claims Against NCO

Plaintiff also filed suit against NCO, a private debt collection company that administered the wage garnishment payments obtained pursuant to Education's AWG order. Plaintiff apparently asserts a cause of action against NCO based on the HEA, specifically alleging violations of 20 U.S.C. § 1095a of the HEA. *See* Compl. 1, 4. Nevertheless, it is well settled that the HEA does not give student borrowers a private right of action against a private actor to enforce its provisions in federal court. *See Riddles v. Sallie Mae*, No. 08-CV-1499, 2009 WL 3734302, at *3 (E.D.N.Y. Nov. 4, 2009); *Josey v. Sallie Mae*, No. 09 Civ. 4403, 2009 WL 2518643, at *5 (S.D.N.Y. Aug. 17, 2009) ("district courts within the Second Circuit uniformly have held that the HEA does not provide a private right of action, as have other Courts of Appeals that have addressed the issue."). Instead, the HEA reserves all enforcement activity to the Secretary of Education. *See* 20 U.S.C. §§ 1070(b), 1082(a)(2), 1082(h). Even if a cause of action existed under the HEA, Plaintiff has failed to present any evidence showing that NCO was responsible for the AWG decision at issue in this case. Indeed, the HEA explicitly provides that only a guaranty agency or the Secretary of Education may garnish a student loan borrower's wages. *See* 20 U.S.C. § 1095a(a). Moreover, Plaintiff failed to demonstrate or even allege that NCO took any action to violate any other of his federal constitutional or statutory rights. In response to whether NCO falsified any loan documents, Plaintiff conceded, "I know NCO is just

collecting money from me." Cunha Decl., Ex. B Pl. Dep. 178:7-8. Accordingly, all federal claims against NCO are dismissed.

To the extent Plaintiff intended to assert pendent state law claims against NCO, the Court declines to extend supplemental jurisdiction over those claims. Under 28 U.S.C. § 1367(c)(3), a district court, in its discretion, may "decline to exercise supplemental jurisdiction over state law claims if it has dismissed all federal claims." *Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 103 (2d Cir. 1998). In considering this discretion, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). In the instant case, all federal claims have been dismissed against all Defendants and nothing counsels this Court to retain the state law claims. Accordingly, all state law claims against NCO are hereby dismissed without prejudice.

## CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss Plaintiff's Complaint are granted. Plaintiff's complaint is hereby dismissed in its entirety and the Clerk of the Court is directed to close this case.

**SO ORDERED.**

/S/

SANDRA L. TOWNES
United States District Judge

Dated: March 18, 2010
Brooklyn, New York

14